**Petition for Writ of Mandamus Conditionally Granted and Opinion filed November 8, 2012.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-12-00697-CV

---

### IN RE EXXON MOBIL CORPORATION, Relator

---

**ORIGINAL PROCEEDING**
**WRIT OF MANDAMUS**
**189th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2009-60726**

---

## OPINION

On July 30, 2012, relator Exxon Mobil Corporation filed a petition for writ of mandamus in this court. *See* Tex. Gov't Code Ann. §22.221; *see also* Tex. R. App. P. 52. In the petition, the relator asks this court to compel the Honorable William Burke, presiding judge of the 189th District Court of Harris County, to vacate his order compelling production of privileged documents. We conditionally grant the petition for writ of mandamus.

# I

Exxon Corporation, which later became Exxon Mobil Corporation ("Exxon"), sold certain real property in Louisiana in 1994 to Trade Exploration Corporation, Bryan C. Wagner, Duer Wagner, III, and James Finley (collectively, "the Wagner Group"). As part of the sales agreement, the Wagner Group agreed to "release, defend, indemnify, and hold [Exxon] harmless from and against all damages, losses, expenses . . . civil fines, penalties, and other costs and liabilities as a result of claims, demands, and causes of action[.]"

Twelve years after execution of the sales agreement, three property owners sued Exxon in three separate actions in Louisiana state court. In each case, the plaintiffs allege environmental damage and seek restoration and remediation of the land. Exxon requested defense and indemnification from the Wagner Group in all three cases, which the Wagner Group declined to provide. The Wagner Group claimed that Exxon had caused the plaintiffs' injuries, and further maintained that the injuries occurred before the Wagner Group bought the property in question.

The first case to go to trial was *M.J. Farms, LTD v. Exxon Mobil Corp. et al.* in Louisiana's Seventh Judicial District Court ("the M.J. Farms case"). Exxon, the M.J. Farms plaintiffs, and Tensas Delta Exploration Company[1] discussed settling the case before trial. Exxon and the Wagner Group dispute the level of the Wagner Group's participation in the settlement negotiations. That dispute notwithstanding, the settlement negotiations were unsuccessful and trial commenced in the M.J. Farms case in Catahoula Parish in March 2011.

---

[1] Tensas Delta Exploration Company is an independent operator located in Shreveport, Louisiana, which owns a fifty-percent undivided interest in the mineral servitude.

The M.J. Farms plaintiffs and Exxon settled during trial. Exxon then sued the Wagner Group for indemnification in district court in Harris County. In this indemnification action, Exxon seeks to recover the amount it paid in settlement plus whatever it may have to pay in the other two lawsuits in Louisiana. Exxon seeks damages as a result of the alleged breach of the indemnification agreement; Exxon does not seek damages for the Wagner Group's alleged failure to defend the M.J. Farms case.

In defense of the indemnification suit, the Wagner Group moved to compel production of certain documents in connection with Exxon's defense and settlement in the M.J. Farms case. The Wagner Group sought production of "all documents relating to Exxon's or Exxon's Litigation Counsel's evaluation of all or part of the [M.J. Farms] litigation"; "all files of Exxon's Litigation Counsel relating to all or part of the [M.J. Farms] Litigation"; all communications with and analyses of jury consultants; and any outlines prepared by ExxonMobil counsel for use in connection with witness examinations during the M.J. Farms trial. The Wagner Group argued that its defense of Exxon's indemnity claim necessitates production of settlement documents and information relating to the settlement agreement; settlement communications and negotiations; communications between Exxon and its counsel regarding Exxon's potential liability to the M.J. Farms plaintiffs; the settlement amount; and communications addressing the cost of remediation.

Exxon objected to the Wagner Group's requests for production and resisted the motion to compel by invoking the attorney-client privilege. The Wagner Group argued in response that Exxon waived its attorney-client privilege under the offensive-use doctrine.

The trial court conducted a hearing, determined that Exxon had waived the attorney-client privilege by offensive use, and ordered production of two specific documents encompassed by the Wagner Group's requests for production and motion to

compel. The parties agreed to await this court's decision on mandamus with respect to these two documents before addressing production of the remaining documents at issue.

For purposes of this mandamus proceeding, Exxon produced privilege logs and two privileged documents to this court in camera. The documents are communications between Caj Boatwright, Exxon's in-house counsel, and other Exxon attorneys and corporate representatives.

## II

Mandamus is appropriate when the record shows that (1) the trial court clearly abused its discretion or violated a duty imposed by law; and (2) there is no adequate remedy by appeal. *In re Daisy Mfg. Co.*, 17 S.W.3d 654, 658 (Tex. 2000) (orig. proceeding). The heavy burden of establishing an abuse of discretion and an inadequate appellate remedy rests on the party resisting discovery. *In re CSX Corp.*, 124 S.W.3d 149, 151 (Tex. 2003). When a trial court erroneously orders production of privileged documents, the harm resulting from having privileged documents inspected, examined, and reproduced cannot be remedied by appeal. *Walker v. Packer*, 827 S.W.2d 833, 843 (Tex. 1992) (orig. proceeding).

## III

The parties do not dispute that the two specific documents at issue in this mandamus are protected from disclosure by attorney-client privilege. The dispute in this court focuses on whether the protection of the attorney-client privilege has been waived under the offensive-use doctrine.

The offensive-use doctrine prohibits a plaintiff who is seeking affirmative relief from maintaining the action and at the same time maintaining "evidentiary privileges that protect from discovery outcome determinative information not otherwise available to the

4

defendant." *Tex. Dep't of Pub. Safety Officers Ass'n v. Denton*, 897 S.W.2d 757, 760–61 (Tex. 1995). The Texas Supreme Court has stated as follows:

> In an instance in which the privilege is being used as a sword rather than a shield, the privilege may be waived. Privileges, however, represent society's desire to protect certain relationships, and an offensive use waiver of a privilege should not lightly be found. For that reason, the following factors should guide the trial court in determining whether a waiver has occurred.
>
> First, before a waiver may be found the party asserting the privilege must seek affirmative relief.
>
> Second, the privileged information sought must be such that, if believed by the fact finder, in all probability it would be outcome determinative of the cause of action asserted. Mere relevance is insufficient. A contradiction in position without more is insufficient. The confidential communication must go to the very heart of the affirmative relief sought.
>
> Third, disclosure of the confidential communication must be the only means by which the aggrieved party may obtain the evidence. If any one of these requirements is lacking, the trial court must uphold the privilege.

*Republic Ins. Co. v. Davis*, 856 S.W.2d 158, 163 (Tex. 1993) (footnotes omitted).

Exxon contends the Wagner Group failed to prove the second and third elements of offensive use because (1) the Wagner Group forfeited the right to challenge reasonableness when it denied a defense, (2) the test for whether a settlement is reasonable is objective, not subjective, and (3) the Wagner Group can obtain the evidence from non-privileged sources. Because they are dispositive, we will address the second and third issues raised by Exxon.

**Is the indemnification standard objective or subjective?**

A party seeking indemnity in connection with settlement of litigation must show its potential liability in the underlying litigation and establish that the settlement was reasonable, prudent, and made in good faith under the circumstances. *Amerada Hess*

5

*Corp. v. Wood Group Prod. Tech.*, 30 S.W.3d 5, 11 (Tex. App.—Houston [14th Dist.] 2000, pet. denied); *see also Fireman's Fund Ins. Co. v. Commercial Standard Ins. Co.*, 490 S.W.2d 818, 824 (Tex. 1972), *overruled on other grounds by Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705, 708 (Tex. 1987). "Questions regarding the reasonableness of a settlement in most personal injury cases are questions upon which the trier of fact must be guided solely by expert testimony." *Amerada Hess*, 30 S.W.3d at 11.

Exxon contends that the scope of discoverable information germane to the underlying settlement does not encompass communications protected by the attorney-client privilege because the governing legal standard for indemnification in these circumstances is objective rather than subjective. According to Exxon, it need only establish that the underlying settlement was reasonable and made in good faith as measured by an objective standard through expert testimony and the like. Therefore, Exxon argues that the offensive-use doctrine is inapplicable because any subjective views held by Exxon or its lawyers about the desirability of the underlying settlement are not outcome-determinative in this indemnification dispute.. In contrast, the Wagner Group contends that an inquiry into Exxon's good faith unavoidably entails an inquiry into the subjective beliefs of Exxon and its lawyers with respect to settlement of the underlying lawsuit as reflected in their communications.

We look for guidance to *Amerada Hess,* a similar indemnification dispute in which this court held that expert testimony sufficiently established both reasonableness and good faith in connection with an underlying settlement in a personal-injury case. *See Amerada Hess,* 30 S.W.3d at 12. We determined that questions regarding the reasonableness of a settlement agreement and whether the agreement was made in good faith are questions requiring expert testimony. *Id.* at 11. Other courts likewise have addressed both good faith and reasonableness under an objective standard. *See Sieber & Calicutt, Inc. v. La Gloria Oil & Gas Co.*, 66 S.W.3d 340, 348 (Tex. App.—Tyler 2001,

6

pet. denied) (in determining whether settlement was reasonable and in good faith, court considered attorney's testimony as to "the underlying facts, the identity of the defendant, the damage elements available to a plaintiff, the specific injuries or losses incurred by a plaintiff, the settlement amounts received in similar cases, the complexity of the case, as well as the strength and resources of the opposing counsel"); *Stumph v. Dallas Fire Ins. Co.*, 34 S.W.3d 722, 732 (Tex. App.—Austin 2000, no pet.) (court considered other lawsuits, costs of paint jobs, and testimony of expert witness that settlement was reasonable).

We also look to Judge Rosenthal's opinion in *Interspan Distribution Corp. v. Liberty Ins. Underwriters, Inc*., CIV. A. H-07-1078, 2009 WL 2605314 at *34 (S.D. Tex. Aug. 21, 2009), in which she concluded that the question of whether a settlement "was reasonable, prudent, and in good faith under the circumstances" is not subjective. "'Under Texas law, where an indemnitee enters a settlement with a third party, it may recover from the indemnitor only upon a showing that potential liability existed, and that the settlement was reasonable, prudent, and in good faith under the circumstances.'" *Id.* (quoting XL *Specialty Ins. Co. v. Kiewit Offshore Servs., Ltd.*, 513 F.3d 146, 152 (5th Cir. 2008)). "If these elements are met, 'the settling indemnitee need not prove actual liability before recovering from the indemnitor.'" *Id*. (quoting *Ins. Co. of N. Am. v. Aberdeen Ins. Servs.*, 253 F.3d 878, 888 (5th Cir.2001)). "This is not a 'subjective standard' . . . ." *Id*.

These cases support Exxon's contention that the inquiry here is objective rather than subjective so as to put attorney-client communications beyond the offensive-use doctrine's reach.

The Wagner Group invites us to draw a distinction between (1) objective reasonableness as to the dollar amount of an underlying settlement; and (2) good faith as a wide-ranging subjective inquiry into all facts and circumstances surrounding a

7

settlement decision other than the dollar amount itself. The Wagner Group seeks to bolster the proffered distinction by pointing to indemnification cases stating that a putative indemnitee must establish good faith "from its standpoint." *See Mitchell's, Inc. v. Friedman*, 303 S.W.2d 775, 779 (Tex. 1957); *Aerospatiale Helicopter Corp. v. Univ. Health Servs., Inc.*, 778 S.W.2d 492, 500 (Tex. App.—Dallas 1989, writ denied), and *Pan Am. Gas Co. v. Nat. Gas Constr. Corp.*, 418 S.W.2d 380, 381 (Tex. App.—Waco 1967, writ ref'd n.r.e.). According to the Wagner Group, references to an indemnitee's "standpoint" mean that good faith must be a subjective rather than an objective inquiry.

We disagree with the Wagner Group's contentions because, notwithstanding the "standpoint" catchphrase, cases upon which the Wagner Group relies used objective factors to determine **both** reasonableness **and** good faith. *See Aerospatiale Helicopter*, 778 S.W.2d at 500 (court found that settlement was reasonable in light of potential liability to plaintiffs); *Pan Am.*, 418 S.W.2d at 381 ("The jury was authorized to return a negative answer to the inquiry (as to whether plaintiff acted in good faith and was reasonably justified in making the settlement) if the evidence sustains the concomitant element that plaintiff failed to establish by a preponderance of the evidence that the entire $22,000 paid was reasonable."); *see also H.S.M. Acquisitions v. West*, 917 S.W.2d 872, 880 (Tex. App.—Corpus Christi 1996, writ denied) (court found that settlement unreasonable and not made in good faith based on desire of party to recover twice for same rental period). We also harbor concern that the approach advocated by the Wagner Group potentially could open the door to wide-ranging discovery into areas otherwise protected by the attorney-client privilege, and could do so without providing any clear means for establishing limits to such discovery.

We held in *Amerada Hess* that objective expert testimony established reasonableness and good faith. 30 S.W.3d at 12. "Absent a decision from a higher court or this court sitting en banc that is on point and contrary to the prior panel decision or an

intervening and material change in the statutory law, this court is bound by the prior holding of another panel of this court." *Chase Home Fin., L.L.C. v. Cal Western Reconveyance Corp.*, 309 S.W.3d 619, 630 (Tex. App.—Houston [14th Dist.] 2010, no pet.). Even if this panel could depart from *Amerada Hess*, we are not persuaded of the case law support or the desirability of doing so. The question of whether the settlement was reasonable and made in good faith is an objective determination, not a subjective one.

**Is the privileged information necessary to the Wagner Group's defense?**

Using an objective standard, evidence of the reasonableness and good faith of the settlement may be obtained from sources other than the privileged materials the Wagner Group seeks. Exxon settled the claim without obtaining a judicial determination of its liability. Exxon settled after almost two weeks of trial in the M.J. Farms case. The record reflects that the Wagner Group had a representative sitting in the trial. The Wagner Group may be suspicious of the subjective strategy that caused Exxon to settle when it did and for the amount it did, but Exxon has assumed the risk of being able to prove the facts that might have rendered it liable to the plaintiffs as well as the reasonableness of the amount that it paid. *See Gulf, C. & S. F. Ry. Co. v. McBride*, 159 Tex. 442, 322 S.W.2d 492, 495 (1958). The Wagner Group has not shown that being deprived of the privileged information it seeks "prevents it from establishing its [defense], such that a trial would be a waste of judicial resources." *In re Kellogg Brown & Root*, 7 S.W.3d 655, 658 (Tex. App.—Houston [1st Dist.] orig. proceeding). For these reasons, the Wagner Group has failed to establish that the information is "the only means by which [it] may obtain the evidence." *See Republic Ins. Co.*, 856 S.W.2d at 163. Because the Wagner Group has not established each of the three elements of offensive-use waiver, the two privileged documents at issue in this mandamus are not subject to discovery.

9

For the foregoing reasons, we conditionally grant mandamus relief and direct the trial court to vacate its order compelling production of the two privileged documents at issue in this mandamus.  We are confident the trial court will act in accordance with this opinion.  The writ will issue only if the trial court fails to do so.


/s/    Jeffrey V. Brown
Justice


Panel consists of Justices Brown, Boyce, and McCally.